## THE FAVORITE.

*(District Court, N. D. Illinois.  May 13, 1882.)*

COLLISION—DAMAGES—LIMITED LIABILITY—INTEREST.

> Where, in an action for damages arising from a collision, the owners of the colliding steamer applied under the admiralty rules for a limitation of their liability as such owners, and by stipulation with approved sureties agreed to make payment of the assessed value of the steamer, and thereby procured her release from arrest, *held*, that the owners were liable, in addition to such assessed value of their steamer, for the interest thereon from the date of the stipulation, with costs of the litigation.

*Schuyler & Kremer*, for libellants.

*Richberg & Kniep* and *A. McCoy*, for respondents.

BLODGETT, D. J.   On the second of August, 1877, a collision occurred upon the waters of Lake Michigan between the steam-propeller Favorite, and the schooner Grace A. Channon, by which the schooner and her cargo of coal were sunk, and became a total loss.   On the sixteenth of the same month a libel was filed in this court by the owners of the Channon against the Favorite, charging the collision to have occurred through the negligence of those in charge of the steamer, and claiming to recover as damages the value of the schooner and her freight.   A further libel was subsequently filed by —— Graham to recover damages for the death of a child who was a passenger on the schooner and was drowned by reason of the collision, and the Providence Washington Insurance Company, who had insured the cargo of the schooner, and paid the loss which accrued under their policy, also filed a libel for the amount so paid.   After the filing of the libel by the owners of the schooner, and the arrest of the steamer, the Kirby Carpenter Lumber Company, who was the sole owner of the steamer at the time of the collision, applied to this court, under admiralty rules 54, 55, 56, and 57, for a limitation of its liability as such owner for damages occasioned by such collision to the value of the steamer and her freight then pending, and such steps were taken that the value of the steamer, her machinery, boats, tackle, apparel, and furniture, (there being no freight pending,) was appraised and fixed at $12,397.80, and her owners, by stipulation, with approved sureties, agreed to make payment of that sum into court whenever ordered, and the steamer was thereupon released from arrest and delivered to her owners.   Upon hearing on pleadings and proofs of the libels for damages, the court found the steamer in fault, and

directed a reference to a commissioner to take proof and report the damages sustained by the respective libellants. The commissioner reported that he finds—

| | |
|---|---|
| The value of the schooner, at the time she was sunk by the collision, was | $15,000 00 |
| That her freight then pending amounted to $277.50, for which she should be allowed one-half, | 138 75 |
| Damages in the Graham suit from the death of child, | 1,000 00 |
| Damages to Providence Washington Insurance Company, insurance of cargo, | 2,500 00 |
| Making a total of damages sustained by the several libellants, | $18,638 75 |

By his report the commissioner finds that the several libellants were entitled to share *pro rata* in the amount fixed as the value of the steamer at the time of the collision; and he also finds that the Kirby Carpenter Company, having appeared as claimant in these several suits, and contested its liability and the liability of the steamer for such collision, is liable for not only the amount called for by the stipulation as the value of the steamer, but also interest upon the same at the rate of 6 per cent. per annum from the date of the collision, together with the costs incurred by the several libellants in their respective suits. Exceptions are filed to so much of the reports as charge the respondent with interest and costs; respondent, the Kirby Carpenter Company, insisting that the amount called for by the stipulation, which was the appraised value of its interest in the steamer at the time of the collision, constitutes the full measure of its liability, and that it is not liable beyond that sum for interest and costs, or either.

The only question to be considered under these exceptions, therefore, is as to the correctness of the commissioner's findings in regard to respondent's liability for interests and costs. By the fifty-fourth rule in admiralty it is provided that—

"Said court having caused due appraisement to be had of the amount or value of the interest of said owner or owners, respectively, in such ship or vessel, and her freight for the voyage, shall make an order for the payment of the same into court, or for the giving of a stipulation, with sureties, for payment thereof into court, whenever the same shall be ordered; or, if the said owner or owners shall so elect, the said court shall, without such appraisement, make an order for the transfer by him or them of his or their interest in such vessel and freight to a trustee to be appointed by the court under the fourth section of said act; and upon compliance with such order the court shall issue a monition against all persons claiming damages for any such embezzlement, loss, destruction, damage, or injury, citing them to appear before the court, and make due proof of their respective claims."

It will be seen that under this rule the court may require the appraised value of the owner's interest in the vessel to be paid into court to await distribution to the several claimants, or allow the owner to retain possession of the vessel, free of liens and charges, in the premises, on his giving stipulation, with sureties, for the payment of the appraised value into court whenever ordered. In this case the owners were allowed to retain the steamer on filing a stipulation, as called for by the rule. The practical effect of doing this is to give the owners the use of the appraised value of the steamer until ordered to pay it into court. If the respondent had paid the value of the steamer into court, the court could, and doubtless would, have ordered the money to be put at interest for the benefit of the parties concerned pending the litigation. But the respondents, evidently preferring to have the use of the steamer, thereby using the money at which she was appraised, instead of paying the money into court, or conveying the vessel to a trustee, elected to give a stipulation, with sureties. It then contested not only its own personal liability, but that of the steamer, to the respective libellants for the consequences of this collision, and insisted that the collision occurred through the fault of the schooner and not from the fault of the steamer, and after forcing the libellants to an expensive and protracted litigation to establish their claims, say it is not liable beyond the amount called for by the stipulation; that it is not liable for interest, and the costs must come out of the fund.

It seems to me a bare statement of the proposition is sufficient to show its injustice and unfairness. By coming into court and seeking to have its liability limited to the value of the steamer, there would seem to be at least an implied admission that the applicant was liable for the consequences of this collision, and needed the benefit of the statute in that regard; and it might perhaps be urged that the owner could not, after such proceedings, be heard to deny its liability to the extent of the appraised value of the steamer. But the supreme court having held that, even after a decree finding the ship libelled at fault, the owner may apply for and have the benefit of this statute, it would seem that the owner has the reserved right to require the persons claiming damages to establish their case by proof; but it cannot, I think, have been the intention, either of congress in framing the statute or of the supreme court by its rules, that the shipowner, after having had the extent of his liability limited and defined by proceedings under the statute, can enter the arena of litigation and contest the question whether he is liable at all or not at the

expense of a fund in which he has no longer any interest, which he has paid or agreed to pay into court as a condition for his discharge from further liability. To allow him to do so would be to put a premium upon the law's delay, and give the ship-owner the right to vex claimants for the fund which he has cited them into court to claim, without risk of cost to himself. The practice under this statute has been so limited in this country that but few adjudged cases are reported, and I do not find any direct adjudication on this point in our courts, although the plain intimation by the supreme court in the case of *The Wanatah*, 95 U. S. 600, is that the owners of the offending vessel are liable for costs and interest. Our statute is taken substantially from the English act of George III. and under that statute the English court of admiralty has always allowed costs, and, in a large number of cases, interest. *The Dundee*, 2 Hagg. 137; *The John Dunn*, 2 Wm. Rob. 160; *The Valiant*, 1 Wm. Rob. 64; *The Amelia*, 34 Law J. 21; *The Northumbria*, 39 Law J. 6; *Smith* v. *Kirby*, 24 W. R. 207.

In this case the stipulation does not, in terms, require the stipulators and sureties to pay interest, and undoubtedly the liability of the sureties cannot be extended to the payment of interest, unless it be for delay after the court has ordered payment; but I am so fully impressed with the obvious justice of the commissioner's findings that I shall overrule the exceptions to the report and order that the stipulators or their sureties pay into court the sum of $12,397.80, mentioned in their stipulation, within 20 days from this date, and that the respondent, the Kirby Carpenter Company, also pay into court within said time the interest on the said sum of $12,397.80, from the date of the stipulation to the present time, and that costs be awarded against the respondent in each of the suits, to be taxed by the clerk.

NOTE. That an action for damages for the death of a person lies in admiralty, see *Holmes* v. *O. & C. Ry. Co.* 5 FED. REP. 75, 523; *The Garland*, Id. 924; *In re Passenger & Freight T. Co.* 5 FED. REP. 599; *The Sylvan Glen*, 9 FED. REP. 335. As to limited liability of ship-owners, see *The Maria and Elizabeth*, ante, 520; *National Steam Nav. Co.* v. *Dyer*, Notes of Decisions, Id. 527, and cases cited.—[ED.